## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 30 2020, 11:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer G. Shircliff
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Bruce E. Brooks, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 30, 2020

Court of Appeals Case No.
19A-CR-2381

Appeal from the Madison Circuit Court

The Honorable David A. Happe, Judge

Trial Court Cause No.
48C04-1601-F6-72

**Bradford, Chief Judge.**

# Case Summary

[1] Bruce E. Brooks, Jr. was sentenced to a fifty-four-month sentence after he pled guilty to and was convicted of Level 6 felony possession of cocaine, Class A misdemeanor driving while suspended, and Class A misdemeanor resisting law enforcement. The trial court ordered that the entire sentence would be suspended to probation. While serving his suspended sentence, Brooks was alleged to have violated the terms of his probation by committing a new criminal offense.

[2] On September 10, 2019, the trial court found that Brooks had violated the terms of his probation and ordered that Brooks serve thirty months of his previously-suspended sentence in Community Corrections on work release. Brooks challenges the revocation of his probation, arguing that he was denied due process by the trial court's failure to make an adequately specific statement setting forth the evidence relied upon in revoking his probation. Alternatively, he argues that the evidence is insufficient to sustain the revocation of his probation. Concluding that Brooks was not denied due process and that the evidence is sufficient to sustain the revocation of Brooks's probation, we affirm.

# Facts and Procedural History

[3] On January 12, 2016, the State charged Brooks with Level 6 felony possession of cocaine, Class A misdemeanor driving while suspended, and Class A misdemeanor resisting law enforcement. Brooks pled guilty as charged on

November 7, 2016. On December 12, 2016, the trial court accepted Brooks's plea agreement and sentenced Brooks in accordance with its terms to an aggregate fifty-four-month sentence, all of which was suspended to probation. One condition of Brooks's probation was to "[o]bey all municipal, state, and federal laws[.]" Appellant's App. Vol. II p. 56.

[4] On October 8, 2018, Brooks was gambling at the Hoosier Park Casino when he won a jackpot. Brooks asked Brock Emerton to claim the jackpot for him, claiming to have forgotten his identification. Brooks offered to give Emerton a portion of the jackpot in exchange for his assistance. Emerton had never met Brooks before Brooks requested his assistance.

[5] Also on that date, State Police Officer David Jenkins was working in his capacity as an officer stationed at the casino by the Indiana Gaming Commission. Officer Jenkins was notified of a possible crime, *i.e.*, a jackpot switch. Surveillance footage showed that after winning a jackpot from a game played on a gambling machine, Brooks walked away from the machine and around a table where he had a brief conversation with Emerton. Brooks walked back around the table and sat down in a seat one seat away from the winning position. When "the attendants came out to pay the jackpot," Brooks pointed to Emerton, "sending the attendant over there so that she could process the jackpot using his information versus" using Brooks's information. Tr. p. 16.

[6] After reviewing surveillance footage, Officer Jenkins approached Brooks and asked "why he did not claim the jackpot he had just won." Tr. p. 15. Brooks

denied having won a jackpot. Officer Jenkins advised Brooks that he had "just reviewed the surveillance footage" and had "determined that he had indeed played the game, which led up to the jackpot, and that he was the person that needed to claim that jackpot, and by not doing so he was committing" a felony. Tr. p. 15.

[7] Officer Jenkins informed Brooks that the jackpot needed to be processed "under his name because he'd be the one to claim it." Tr. p. 17. Despite claiming that his identification was expired, Brooks eventually provided his identification to the casino attendant for processing. Officer Jenkins informed Brooks that if his identification was expired, he could simply "bring back" valid identification and receive his prize money. Tr. p. 17. Brooks responded "no" when Officer Jenkins asked him if there was any other reason why he would not be able to claim the money. Tr. p. 18.

[8] The casino "reclaimed the jackpot" from Emerton and "so that it could be processed accordingly using" Brooks's information. Tr. p. 30. While processing the jackpot, a casino manager discovered that "there was back child support" and, as a result, the entire jackpot was forfeited. Tr. p. 38. The State subsequently charged Brooks with Level 6 felony cheating at gaming.

[9] On March 5, 2019, the State filed a notice of probation violation. During an August 27, 2019 evidentiary hearing, Officer Jenkins and Emerton testified about the incident at the casino. The probable cause affidavit created by Officer Jenkins and the casino surveillance video were also entered into evidence.

Brooks also testified, admitting that he owed back child support on the date in question. During a September 10, 2019 sanction hearing, the trial court found that Brooks had violated the terms of his probation by committing Level 6 felony cheating at gaming. The trial court revoked thirty months of Brooks's previously-suspended sentence and ordered that time be served in Community Corrections on work release.

## Discussion and Decision

[10] Brooks appeals the trial court's order revoking his probation. "Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007).

> The trial court determines the conditions of probation and may revoke probation if the conditions are violated. Once a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed. If this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants. Accordingly, a trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances.

*Id.* (internal citations omitted). In challenging the revocation of his probation, Brooks contends that he was denied due process. Alternatively, he contends that the evidence is insufficient to sustain the revocation of his probation.

# I. Denial of Due Process

[11] Brooks contends that he was denied due process because the trial court failed to provide an adequate written statement outlining the evidence relied on by the court in revoking his probation. "A defendant facing revocation of probation is entitled to certain due process rights, including: … (f) a written statement by the factfinder as to the evidence relied on and reasons for revoking probation." *Puckett v. State*, 956 N.E.2d 1182, 1186 (Ind. Ct. App. 2011). "The written statement requirement is a procedural device aimed at promoting accurate fact finding and ensuring the accurate review of revocation decisions." *Id.* "A transcript of the evidentiary hearing, although not the preferred way of fulfilling the writing requirement, is sufficient if it contains a clear statement of the trial court's reasons for revoking probation." *Id.*

[12] The transcript of the evidentiary and sanctions hearings provides the written statement outlining the evidence relied on by the trial court in revoking Brooks's probation. At the conclusion of the evidentiary hearing, the trial court found as follows:

> Based on the evidence the court is gonna find the State met its burden to prove by a preponderance standard that the defendant did commit this crime on that date. The victim of the fraud doesn't have to be the gambling business where you're gambling, it can be someone else. The statute is open[] ended and the charge is open ended. It's intent to defraud. And the court would find that the victim of the fraud here that was intended to be defrauded was the recipient of the child support money and the Federal and State Governments who have an interest in the accurate tax reporting of gambling winnings. And, uh, - So I

would find a violation.  The defendant has committed the offense of which he was accused in the notice of violation.

Tr. pp. 52–53.  During the subsequent sanctioning hearing, the trial court expanded on its statement, stating the following:

> [T]o see you at the casino breaking the law, I know you have a hard time accepting that, but I don't.  It's very clear to me after watching those – the [surveillance] video there and hearing the description of what happened, you knew exactly what you were doing.  You knew that if you turned in the claim yourself that you were gonna get that money taken away from you for child support.  So you conspired with somebody else to make that claim of winnings so you could get it without losing it to child support.  That was no accident.  And when you're confronted about it, you lie about it.  And here in court you've not accepted responsibility for the choices that you've made, and that's really disappointing because it tells me that now … [at] [t]hirty-three (33) years old, you're still thinking like a criminal.…  So you're a person who's here on felony supervision who's going out and committing new crimes trying to cheat your children of child support.  That's what it is.…  I see a man who has responsibilities that he's not living up to, and he's breaking the law.

Tr. pp. 85–86.  These statements, when read together, clearly set forth the evidence the court relied on in finding that the State met its burden of proving that Brooks violated the terms of his probation by committing a new criminal offense.  Specifically, the statements establish that the trial court relied on evidence indicating that Brooks, knowing that he owed back child support, attempted to conceal his identity as the winner of the jackpot in order to avoid

the confiscation of his winnings. As such, we are unpersuaded by Brooks's contention that he was denied due process.

## II. Sufficiency of the Evidence

[13] Alternatively, Brooks contends that the evidence presented during the evidentiary hearing is insufficient to support the revocation of his probation. "A revocation hearing is in the nature of a civil proceeding, and the alleged violation only needs to be established by a preponderance of the evidence." *Smith v. State*, 727 N.E.2d 763, 765 (Ind. Ct. App. 2000).

> In reviewing the sufficiency of the evidence, we use the same standard as in any other sufficiency question. When the appellant challenges the sufficiency of the factual basis for revocation, we neither reweigh the evidence nor judge the credibility of the witnesses. If substantial evidence of probative value supports the trial court's decision that the appellant has committed a violation of a condition of his probation, then revocation of probation was proper.

*Id.* "If there is substantial evidence of probative value to support the trial court's decision that a defendant has violated any terms of probation, the reviewing court will affirm its decision to revoke probation." *Woods v. State*, 892 N.E.2d 637, 639–40 (Ind. 2008).

[14] The State alleged that Brooks violated the terms of his probation by committing the new criminal offense of Level 6 felony cheating at gaming. "A person who knowingly or intentionally does any of the following commits a Level 6 felony … (9) Claims, collects, takes, or attempts to claim, collect, or take money or

anything of value in or from a gambling game: (A) with the intent to defraud[.]" Indiana Code section 4-33-10-2(9)(A). Thus, in order to prove that Brooks violated the terms of his probation by committing the new charged offense, the State was required to prove, by a preponderance of the evidence, that Brooks, with the intent to defraud, knowingly or intentionally claimed, collected, took, or attempted to claim, collect or take money or anything of value in or from a gambling game.

[15] In challenging the sufficiency of the evidence to sustain the revocation of his probation, Brooks does not dispute that the State provided sufficient evidence to prove that he claimed, collected, took, or attempted to claim, collect, or take money from a gambling game with the intent to defraud. Rather, he argues only that the State failed to prove that he acted knowingly or intentionally. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is conscious objective to do so." Ind. Code § 35-41-2-2(a). Intent "may be proven by circumstantial evidence alone, and it is well-established that knowledge and intent may be inferred from the facts and circumstances of each case." *Scott v. State*, 867 N.E.2d 690, 695 (Ind. Ct. App. 2007).

[16] The probable cause affidavit, which was completed by Officer Jenkins in connection to the newly-charged offense and admitted into evidence at the evidentiary hearing, indicates that Brooks conspired to have Emerton collect the jackpot winnings in order to avoid forfeiting the jackpot to his child support

arrearage. In asking Emerton for assistance, Brooks lied about why he needed Emerton to collect the jackpot, claiming that "he didn't have his I.D." Tr. p. 43. Brooks gave a different explanation to Officer Jenkins, claiming that he did not owe any back child support but that his identification was expired. Brooks, however, admitted during the evidentiary hearing that he owed back child support on the date that he won the jackpot. We agree with the State that the evidence supports that reasonable inference that Brooks acted knowingly or intentionally when he "attempted to avoid forfeiture of the jackpot winnings by conscripting a stranger to process the jackpot under their name instead of his own." Appellee's Br. p. 17. As such, we conclude that the evidence is sufficient to prove beyond a preponderance of the evidence that Brooks violated the terms of his probation by committing the crime of Level 6 felony cheating at gaming.

[17] The judgment of the trial court is affirmed.

Baker, J., and Pyle, J., concur.